United States v. Patterson. Mr. O'Malley. Good morning. My name is Tom O'Malley. I represent the Defendant Appellant Cameron Patterson. On May 29, 2013, the PNC Bank in Austin, Indiana was robbed. My client, Cameron Patterson, was one of the participants in that robbery. On July 23, 2013, Mr. Patterson was interrogated by Agent Stewart. The problem with your position is that the FBI treated this fellow, your client, with such kid gloves that if we were to reverse it would mean there would be a charge against him. The FBI did not treat Mr. Patterson as a kid glove. The FBI did not treat Mr. Patterson as a kid glove. The FBI did not treat Mr. Patterson as a kid glove. So what's your conception of a non-custodial interview by police or FBI? It is, Your Honor, I think that Ambrose, the case chosen by the court for the guidelines of how the procedure should take place is agreed upon by both parties. They drove him home, didn't they? They did, Your Honor, yes. He accepted their ride. He said, they said you can go anytime you want. He said, thank you. You want a ride? Yeah, okay. They did not... And he left. They didn't come back for some time. I have a slight disagreement there, Your Honor. I don't believe they ever said you can go anytime. In fact, Judge, when they met in the driveway, Agent Strayer put his hand on his weapon, showed his FBI credentials. Then there was a stop and frisk. Again, not very long. There was a quick raise of his shirt. They told him... Well, you haven't answered my question. I'm sorry, Judge. You described for me what you regard as a non-custodial interrogation of a suspect. A non-custodial interrogation would be any interrogation where the person was, I suppose, told that he was not under arrest and told that he was free to leave at any time. Those statements were never made to Mr. Patterson. He wasn't told he was under arrest. He was never told he was... That is correct, Judge. He was never told you are under arrest. Neither was he told you are not under arrest. We have to tell a person he's not under arrest? Actually, Judge, the Ambrose case, which was decided by this court, suggests that one of the factors is, did the officers inform the individual that he was not under arrest? It could be a factor with other factors. I don't see the other factors here. What else is going on that you disapprove of? Are you allowed to interview the person in a police station, or is that forbidden also? That's certainly allowed, Judge. Pardon? That would be allowed. So what's the problem? In this case, Judge, there were three locking devices, electronic locking devices, that had to be accessed before they went to the conference room. Wait, wait. You lost me. Electronic device? Yes, Judge. One was a code that you had to punch in, and one was a card reader, and I forgot the other one. Well, what are you talking about? What does this have to do with custody? Well, the question is, was he inside a locked room, or wasn't he? See, Judge, so that would go towards custody. But the fact is, it was not locked. My client was never aware of that. He was never aware that it was not locked? Correct, Judge, because they had to go through the three electronic... So why did he think it was locked? Because they went through three electronic devices. Why didn't he ask them? Are you locking me in? I want to leave. I think he presupposed he was locked in, Judge. So any presupposition by a person who's being interrogated turns it into a custodial interrogation? A logical one would, Judge, or a reasonable one. Yeah, but what you're saying is, any time a person is questioned in a police station, that is custodial. No, that's not what I said, Judge. I believe that looking at the factors, the totality of decisions... But don't forget totality. Okay. Do they have to tell him, you're free to leave? Because it's custodial if they don't tell him you're free to leave? Is that your rule? Do you want us to adopt it? I don't think we can have a bright-line rule when we look at the totality of the circumstances. No, come on. I don't want muzziness. What is it you think is the minimum that's required to make an interrogation in a police station non-custodial? I believe the minimum that is required is evidence or a statement to him that you are free to leave at any time and you are not under arrest. That's what I would propose. However, this court has repeatedly said that look at the totality of the circumstances and determine if a reasonable person under those circumstances would believe they were free to leave. That's mush. What's a reasonable person? It's the Seventh Circuit standard. Yeah, I know. But there's a lot of stuff in judicial opinions that is opaque no matter how often it's repeated. Well, Judge, to say what a reasonable person would think is to put it in the vernacular of the people on the street. When two FBI agents, as they say, roll up on you in an alley and say, hey, we want to talk to you about a bank robbery and one has their hand on a weapon, does a reasonable person think he can walk away? And our position is no, he doesn't. So the police are not allowed to try to protect themselves? They certainly are, Judge. But they have to give a Miranda warning if they touch their gun. If they're going to interrogate him, I believe they should. That's your position. Yes, Judge. Okay. Okay, well, thank you. Thank you, Mr. O'Malley. Mr. Whalen? Good morning, Your Honors. May it please the Court. My name is Nathaniel Whalen. I'm here on behalf of the United States. Your Honors, the District Court properly found Mr. Patterson was not in custody when he confessed to an armed bank robbery for many of the reasons Your Honors have stated today. There is no rule that the police officers need to say you're not under arrest. And in any event, they did convey to him that he wasn't under arrest. They said, unless you admit to murder today, you're going out of here at the end of this. And that's what they did. To your point, Judge Bauer, they said, do you need a ride? He said, yes. They drove him to the location of his choice. Basically, what Mr. Patterson's argument is that essentially a Terry stop constitutes a custodial arrest. The officers... That's pretty strong. Pretty accurate as I understand it. Well, Your Honors... Makes sense. That might be his argument, but this court and the Supreme Court have rejected that. A Terry stop is not custodial. You don't have to give Miranda warnings. And to the extent that the fact that the FBI agent or the task force officer went up with his hand on his gun briefly and then did pat his outer pockets. Right after that, they said, as they're letting him into the front seat of the unmarked car, just to confirm you're coming with us consensually, voluntarily. He said, yes. Do I recall that he said he wanted to clear up his name, or was that something they said? They approached him and they said, your name keeps coming up in this investigation. Would you like to clear your name? And he said, yes. And how would you describe that? Is him saying he wanted to clear his name, or did they ask you where you wanted to clear your name? I would say it's both, Your Honor. They certainly were the ones who brought up clearing your name in the first instance, but that's what he said he was coming down to do. Part of the problem that we have in this case is, though there's a lot of discussion about what Mr. Patterson thought and believed, we don't actually have his testimony. We don't know what he thought. We don't know what he believed. What we have are the statements of the two officers in this case who the district court found credible. We have their statements that Mr. Patterson said he was consensually and voluntarily coming with them. We have no restriction of movement. They didn't handcuff him. They didn't have this massive display of force where there are 13 officers breaking down the door with guns drawn. You know, we're just missing all that in this case. What we have, basically, again, is a Terry stop and then nothing more after that. Okay. Unless this Court has any questions, we rest on our briefs and ask that you affirm. Okay. Thank you very much.  So, Mr. O'Malley, give you a minute if you want. Yes, please, Your Honor. Your Honor, I just have a few disagreements. What about his point about the Terry stop? Yes, Your Honor. That was my first point. Your Honor, I don't believe a Terry stop typically lasts two hours. This was a two-hour Terry stop. Well, they might last quite a while if you drag it out. They may, Judge. Is there a time limit that's set out in Terry that says you can only do this? No, Judge, there isn't, but they move to- He says a brief stop. Right, but I don't consider two hours brief. Well, he voluntarily went to the police station. Yes, Your Honor, and that too. He sat there. That was the FBI office. And, by the way, Your Honor, that was by deception. Well, did he get impatient when he was in the police office and say, I want to go? No, he did not say he wanted to go, Judge. You're an acquainted attorney, aren't you? Yes, I am, Your Honor. You're doing a marvelous job. Thank you, Your Honor. You know, he may have felt that if he said, I want to go, you know, that makes him more suspicious, and they'll follow him, whereas if he plays along with them and stays there, he has a better chance of getting away. He could, Your Honor. The only other point I wanted to make was- Well, isn't that true? Yes, Your Honor. It would make sense for him to stay and cooperate. It could make him more suspicious. Absolutely. What are Miranda warnings are going to do for him? Do you think there's a chance in a million that he would refuse to speak to them after receiving a Miranda warning? I do think so, yes. Really? Yes, I do. Is this an educated person? Yes, Your Honor. I think he would. Is he an educated person? No, Your Honor. No. As far as high school goes. Isn't it rare for uneducated people to say after being given a Miranda warning, yeah, I won't talk to you, I want a lawyer. Isn't that rare? I don't believe so, Judge. In fact- Are there statistics? You can bet on it the other way. It's not in the record in this case, Judge, but the fact is that two weeks later when they did arrest him, he said he wanted a lawyer. Uneducated crooks don't tell anybody anything. Typically, Judge, they are taciturn. If their occupation is crime, they're not going to talk to cops. Correct, Judge. They're the enemy. And I think that is the reason why this was intentionally not recorded. Yeah. If they had put a microphone in front of him, they know he's not going to talk. Okay, well, thank you very much- Thank you, Your Honor. Thank you, counsel, and the court will stand in front of this.